## HORN *v.* DETROIT DRY DOCK COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MICHIGAN.

No. 129.   Argued December 5, 1893. — Decided December 18, 1893.

In chancery proceedings in the Federal courts, when a plea in bar meets and satisfies all the claims of the bill, and it is sustained, it will, under

equity rule 33, avail the defendant so far as to require a final decree in his favor.

In this case the proofs taken fully and clearly establish the truth of the matters set up and alleged in the defendants' plea, including the complainant's receipt in full satisfaction of all claims.

While it is true that a receipt is open to explanation by parol proof to show what its real consideration was, the issue to that effect must be raised by the pleadings, and must have been taken in the court below, to be available here.

An accord and satisfaction cannot be set aside for mutual mistakes in regard to material facts, if the alleged mistakes have not been set up by proper pleadings.

THE single question presented by the record in this case is whether the action of the court below, in sustaining the plea in bar of the suit and dismissing the bill, was correct.

The appellant, who was the complainant below, alleged in her bill that in July, 1880, she was the owner of the steamers Garland and Excelsior, which were used and employed in navigating the Detroit River and the connecting waters; that the Detroit Dry Dock Company (one of the appellees) held mortgages on these steamers aggregating $22,643, the equity of redemption in which was of considerable value; that on July 22, 1880, the Garland, under command of George Horn, son of the complainant, while proceeding down the Detroit River collided with the steam yacht Mamie, which had on board an excursion party, several of whom were drowned as the result of the collision; that the personal representatives and heirs of those drowned, claiming that the Garland was in fault, commenced suits in admiralty in the United States District Court at Detroit to recover damages on account of their deaths; that the Detroit Dry Dock Company furnished bond for the steamer Garland, and became responsible to counsel for their fees, it being agreed between the complainant and the company that the latter should hold the title to the steamer Garland, in connection with its mortgage, as security for the indebtedness of the complainant, and of all liabilities incurred on her behalf; that shortly after the collision various suits were commenced in the state courts against the complainant personally for damages on account of the collision,

and also a prosecution against her son, George Horn, as master of the Garland; that the complainant employed counsel to defend these suits; that at or about the same time a suit was commenced in the Maritime Court of Ontario against the Garland for supplies furnished the boat by parties residing in Canada, under which an attachment was issued, and the vessel was levied upon and ordered to be sold *pendente lite*, and at the sale thereof the Detroit Dry Dock Company purchased the steamer for $17,050, which sum it was alleged the company advanced on agreement with the complainant, thus making her total indebtedness to that company amount to the sum of $39,693; that the sum for which the Garland was thus sold, and which was paid into the Maritime Court of Ontario by the Dry Dock Company, was in excess of the claims proved in that court, and that the Dry Dock Company subsequently filed a petition to have the surplus proceeds, amounting to about $11,000, paid over to it as mortgagee, which sum it agreed to credit the complainant after payment of all expenses and costs for collecting the same; that subsequently on September 21, 1880, the complainant conveyed the Excelsior, subject to the mortgage aforesaid, to her son, John Horn, and shortly afterward an execution against him was levied upon the steamer, which was sold thereunder and purchased by the Detroit Dry Dock Company in the name of its secretary for the sum of $505, which was paid by the company under an agreement that it would hold it and the steamer Garland as security for the indebtedness of the complainant and advances made by the company, and would run and operate both vessels, and render an account of their earnings, and that when her indebtedness and advances were paid, return the steamers to the complainant; that the Detroit Dry Dock Company organized a corporation called the Detroit River Ferry Company, to which the steamers were conveyed, as trustee, to carry out the agreement with complainant, all of the stock in which corporation was subscribed for and held by the stockholders of the Detroit Dry Dock Company, and actually belonged to it; that shortly thereafter the Dry Dock Company purchased, for the sum of $23,000, the steamer For-

tune, and caused her to be conveyed to the Detroit River Ferry Company; that this last named company and the Detroit and Windsor Ferry Company, engaged in a similar and rival business, were thereafter consolidated and incorporated under the laws of Michigan under the name of the Detroit, Belle Isle and Windsor Ferry Company, and the three steamers were conveyed to the consolidated company for the sum of $83,000 of its capital stock, the steamers Garland and Excelsior being estimated at $60,000, or 600 shares of the stock of the concern, which were held by the Detroit Dry Dock Company on the same terms it held the steamers Garland and Excelsior; that the par value of the $60,000 of stock was actually worth $70,000.

The bill also alleged that on June 27, 1881, the complainant entered into a written contract with the Dry Dock Company, which, after reciting in its preamble the history of the litigation growing out of the Garland's collision with the Mamie, and the transfer of the two steamers to the Detroit, Belle Isle and Windsor Ferry Company, and the desire of Sarah Horn to purchase a part of the stock held by the Dry Dock Company, stipulated that the Dry Dock Company agreed to sell and deliver to the complainant, her executors, administrators, or assigns, 600 shares of the capital stock of the Detroit, Belle Isle and Windsor Ferry Company, each of the par value of $100, and that it would advance and pay the complainant's attorneys their disbursements, expenses, and charges for services rendered, or to be rendered, in all suits, above referred to, growing out of the collision, and would also pay to the complainant or apply to her indebtedness whatever might be paid to the company by the Maritime Court of Ontario out of the proceeds of the steamer Garland, after deducting costs and expenses, and that in consideration of this agreement the complainant agreed to pay the Dry Dock Company the sum of $51,000 within three years from the date thereof, with annual interest at the rate of ten per cent, and also such sum or sums of money as might be paid by the company to her counsel, and any other sums that might be paid by the company on any decree or decrees that

might be rendered against the complainant or the steamer Garland growing out of the collision with the steam yacht Mamie, all sums so paid to her counsel, or upon any decree or decrees in the pending suits were to be added to and form a part of complainant's indebtedness, which was to be paid within three years from the date of the agreement, with interest at the rate of ten per cent per annum; that 600 shares of stock were to be delivered upon the payment of such sums, and upon the failure to pay the same within the time provided the Dry Dock Company might sell enough of the stock, upon ten days' notice, to pay the same, but at not less than its par value. It was further agreed that any dividends received by the Dry Dock Company upon the stock should be applied upon the indebtedness. It was further stipulated that "the said Sarah Horn in consideration of the said agreement of the said Detroit Dry Dock Company does hereby release, discharge, convey, and quitclaim any and all interest, claim, or demand of any kind or nature whatsoever she may have, or pretend to claim to have, against said Detroit Dry Dock Company, to either of said boats or to the earnings or the proceeds of the sale, received or to be received by said Detroit Dry Dock Company, or by either of said ferry companies."

The bill also alleged that on the day following the execution of this agreement, her son-in-law, Albert R. Schulenberg, having falsely and fraudulently represented to her that the Detroit Dry Dock Company would not carry the 600 shares of stock for her account, suggested that his father (the appellee, Frederick Schulenberg) would advance the money to pay the Dry Dock Company, and would assume all liabilities which that company had assumed on behalf of the complainant, and would pay her the sum of $200 per month for three years for living expenses, and would take and hold the stock and manage the same, and at the end of three years deliver to her $25,000 of the par value of the stock, free and clear of all incumbrances; that the complainant relied upon this representation and agreed to that proposal; that Albert Schulenberg thereupon brought her a paper, signed by

Frederick Schulenberg; that upon reading it she discovered that it only referred to the monthly payments and was silent as to the $25,000 of stock which the said Schulenberg had agreed to return to her free of all incumbrances at the end of three years; that she refused to accept the paper on the ground that it did not represent the agreement of Frederick Schulenberg, and that her son-in-law Albert, upon her refusal, said that "it would make no difference, that his father would carry out the agreement to the letter," and thereupon placed the paper in a desk in the complainant's house, where it remained.

The bill then states that Frederick Schulenberg paid the complainant during the next three years the sum of $200 per month as agreed, but at the end of three years repudiated his agreement to return to her $25,000 of the par value of the stock; that she thereupon brought suit against him in the Circuit Court of the United States for the Eastern District of Michigan, and that it was held by that court that she had no remedy at law, and it directed a verdict in favor of the defendant Schulenberg, and for greater certainty reference was made to the files, records, and proceedings in that case.

The bill also sets out that Frederick Schulenberg held all of the 600 shares of stock, except 175 shares held by the Detroit Dry Dock Company; that in equity and good conscience the complainant was entitled — if the agreement with Frederick Schulenberg is valid — to the $25,000 of the par value of the stock and the earnings thereof; that all of the claims, suits, and proceedings against the steamer Garland and against the complainant, arising out of the collision, had been fully compromised and settled, and wholly released and discharged by the Dry Dock Company paying, with her approval, the sum of $3000 in full satisfaction of the same.

It was further alleged that the earnings of the 600 shares of stock were very large, and that Frederick Schulenberg and the Dry Dock Company received the same and refused to render the complainant any account of the amounts received by them from time to time as dividends thereon.

The prayer of the bill was that Frederick Schulenberg, in

case his agreement with the complainant is held to be valid, may be decreed to transfer to her $25,000 of the stock free and clear of all incumbrances, and to account for and pay over to the complainant the earnings of that amount of stock since the time the same should have been transferred to her; and with the alternative prayer, in case said agreement with Schulenberg is held to be invalid, that he and the Dry Dock Company shall be .declared trustees for her of 600 shares of the capital stock of the Detroit, Belle Isle and Windsor Ferry Company, and be required to account to her for the amount thereof, and all dividends received thereon to be. applied on her indebtedness to the Dry Dock Company ·until the same shall have been discharged, and the balance paid over to her.

To this bill the Dry Dock Company filed its plea, averring that before the bill was filed it had transferred all of the 600 shares of stock which it held in lieu of its mortgages on the steamers Garland and Excelsior to the defendant, Frederick Schulenberg, as assignee of the complainant, under and in pursuance of the complainant's assignment to him, and that for a long time prior to the filing of the bill it had not, nor had it then, in its hands or under its control any of the 600 shares of stock, or any claim to or interest in the same, and that neither the Dry Dock Company nor the Detroit, Belle Isle and Windsor Ferry Company had any further interest in or connection with the case.

The .defendant Frederick Schulenberg, for plea to the whole bill, set up the maritime proceedings against the steamer Garland at Windsor, Ontario, under which that steamer was sold and purchased by the Dry Dock Company; that thirteen suits were commenced by one James H. Cuddy, as administrator, in the District Court of the United States at Detroit, Michigan, against the steamer Garland to recover damages for loss of life occasioned by the collision mentioned in the bill with the steam yacht Mamie; that the Garland had been seized by the marshal of .the district under process issued in said suits, and being in custody was duly appraised and bonded by and under the claim of the Detroit River Ferry Company, which was formed by the officers of the Detroit Dry Dock Company for the pur-

pose, and to whom the Detroit Dry Dock Company had sold
and conveyed the same; that these cases were put at issue and
on March 5, 1883, one of them was brought on to be heard on
pleadings and proofs, and that a decree was made by the Dis-
trict Court of the United States dismissing the libel with costs,
from which Cuddy appealed to the Circuit Court of the United
States, where the decree was affirmed with costs, from which
last decree the libellant appealed to the Supreme Court of the
United States; and that on October 14, 1880, James H. Cuddy,
as administrator of the estates, respectively, of the persons lost
by the collision, commenced thirteen suits at law in the Superior
Court of Detroit against the complainant as owner of the Gar-
land at the time of the collision, to recover the same damages
as claimed in the admiralty cases. These suits were put at
issue. On December 3, 1883, her attorney presented her peti-
tion to the District Court of the United States for a limitation
of her liability as owner of the steamer Garland, and alleged
therein the pendency of the thirteen suits at law in the Superior
Court of Detroit, to which petition James H. Cuddy, as admin-
istrator, answered, and on February 22, 1885, the matter was
submitted for decision. Subsequently the judge of the United
States District Court signed a decree limiting her liability as
owner of the Garland at the time of the collision to the sum
of $60. Upon the filing of the petition in the Federal court
limiting her liability, a plea *puis darrein continuance*, setting
up said proceedings as a bar to the further prosecution of those
suits in the state court, was entered in each of the pending
cases, and the plaintiff in each and all of those suits, except in
case No. 4410, failing to reply to the plea as required by the
rules and practice of that court, a default was entered in each
case and made absolute, and a judgment entered in favor of
the complainant for costs in each of the cases; that the com-
plainant, by her new attorney, declined to accept the benefits
of the decree limiting her liability.

It was further averred in the plea that on August 24, 1884,
the complainant, by her attorney, commenced a suit at law
against the defendant in the Circuit Court of the United
States, which was afterwards brought to trial and resulted

in a verdict being rendered in favor of the defendant upon the ground, as stated in paragraph 11 of the bill, that the complainant had no remedy at law and that her proper remedy was in equity, and upon which verdict judgment was entered against the complainant in favor of the defendant Frederick Schulenberg.

It was further averred that on January 20, 1886, the complainant commenced suit for the same cause of action as in this case by filing a bill of complaint in the Superior Court of Detroit, in chancery, against the Dry Dock Company, the Detroit, Belle Isle and Windsor Ferry Company, and Frederick Schulenberg, seeking the same relief sought in this case and in her suit against defendant Schulenberg in the United States Circuit Court.

That on April 10, 1885, in the suit No. 4410 at law, against the complainant personally in the Superior Court of Detroit, by her consent a judgment was entered against her in favor of the complainant Cuddy, as administrator for $15,000 damages, and $270 costs, and by stipulation of her attorney defaults in the other twelve cases were set aside; that on the same day said judgment was entered the plaintiff therein filed affidavits separately against the Dry Dock Company and Frederick Schulenberg as garnishee debtors of Sarah Horn, the judgment debtor in the case. The plea further averred that writs of garnishment were duly issued out of said court, and served on the parties, who appeared and filed their disclosures thereto; that the foundation of the garnishment proceedings was the same, and based upon the same claim of indebtedness from the said parties to Sarah Horn, as was the foundation for and claim of indebtedness in this case; that the aforesaid litigation being pending and a judgment against the complainant being in full force and wholly unsatisfied, the issue in the garnishment proceedings came on to be tried before a jury duly impanelled, and the trial continued in progress on the 12th, 15th, 16th, and 17th days of March, when on March 17, and during the trial, all of the parties, together then and there, entered into a full and complete adjustment and settlement of all claims and

demands, and of all litigation, and all of the conditions of the agreement were then and there performed, and in pursuance thereof there was paid in behalf of the Detroit Dry Dock Company and Frederick Schulenberg to Cuddy, as administrator, and to Sarah Horn, the sum of $3000, in settlement of all the claims against the garnishees, and that stipulations were signed and delivered discharging all of the judgments and decrees, and for the discontinuance of all of the pending suits as aforesaid; and that Cuddy and Sarah Horn then and there executed and delivered receipts and acquittances in the words and figures following :

" For a valuable consideration to me in hand paid by Sarah Horn, owner of the steamer Garland, I hereby acknowledge satisfaction of all claims and demands of every name and nature which I may have against said Sarah Horn, personally or as administrator of the several persons drowned July 22, 1880, through a collision between said steamer Garland and steamer Mamie, or which I may have against said steamer or persons who have become interested since said collision.

" Detroit, March 17, 1886.　　　JAMES H. CUDDY,

　　　　　　　　" *Personally and as Administrator.*

" For a valuable consideration to us in hand paid we hereby acknowledge satisfaction of all claims and demands of every name and nature which we or either of us may have from the beginning of the world up to the present time against the Detroit Dry Dock Company, the Detroit River Ferry Company, the Detroit, Windsor and Belle Isle Ferry Company, Alexander McVittie, Albert. R. Schulenberg, or Frederick Schulenberg or any of them.

" Detroit, March 17, 1886. ·　　　JOHN HORN, JR.

　　　　　　　" SARAH HORN."

The plea further averred that the receipts were in the possession of the defendant and ready to be produced, and that the stipulations were thereupon duly filed in the respective

courts; and that the aforesaid suits in the District Court of the United States, in admiralty, and in the Supreme Court of the United States, and in the Superior Court of Detroit, in law and in chancery, were all discontinued without costs, and satisfaction of judgments and decree in the Circuit Court of the United States for the Eastern District of Michigan in favor of the defendant and the claimant of the steamer for costs; and in the Superior Court of Detroit in favor of said Cuddy for damages and costs, were duly entered. Whereupon the defendant pleaded the settlement and release in bar to the whole of the complainant's bill, and prayed judgment of the court whether he should make any further answer thereto, and further prayed that he be hence dismissed.

The complainant, by a general replication, put this plea in issue.

The agreement of the complainant with Frederick Schulenberg, referred to in the pleadings, as reduced to writing, was as follows:

"Know all men by these presents that I, Sarah Horn of Detroit, Michigan, for and in consideration of the sum of one dollar and of other valuable considerations, to me in hand paid by Frederick Schulenberg of St. Louis, Missouri, have assigned, sold, transferred, and set over, and do hereby assign, sell, transfer, and set over, to said Frederick Schulenberg all my interest, claim, or demand of, in, and to six hundred shares of stock of the capital stock of the Detroit, Belle Isle and Windsor Ferry Company, which are to be delivered to me upon payment of certain moneys mentioned in a written agreement made and dated on the twenty-seventh day of June, 1881, between the Detroit Dry Dock Company and myself, and also all my interest, claim, or demand of, in, and to the moneys payable to me by said agreement subject to the payment by said Frederick Schulenberg of the moneys by me agreed in said instrument to be paid to the performance by him of all the other terms and conditions of said instrument, reference being made thereto for greater certainty; and I do authorize and empower the said Frederick Schulenberg, his executors,

administrators, or assigns, in my name, place, and stead, to demand and receive the said stock, money, or other claim or interest hereby transferred, and to otherwise enforce the performance of said agreement in all respects the same as I might have done, with power of substitution and revocation.

"In witness whereof I have hereunto set my hand and seal this twenty-eighth day of June, A.D. 1881, in duplicate.

"SARAH HORN.   [SEAL.]
"Witness: John Horn, Jr."

Schulenberg, upon receiving this agreement, executed and delivered the following written acknowledgment:

"In consideration of the assignment by an instrument of this date, made by Sarah Horn to me all her interest in and claim to six hundred shares of the stock of the Detroit, Belle Isle and Windsor Ferry Company, agreed to be delivered to her by the Detroit Dry Dock Company in an agreement dated June 27, 1881, and also of interest in and claim to certain moneys mentioned in said agreement, and to be paid to her by said company, and which assignment is made subject to the performance of the conditions, payments, and other terms therein contained and by her to be performed or paid, I do hereby agree to pay to said Sarah Horn the sum of two hundred dollars ($200) per calendar month for three years from and after this date."

He thereupon gave notice of the assignment as follows:

"To the Dry Dock Company:

"Take notice that Sarah Horn has made an assignment to me, of which the above is a duplicate original, and I claim all the rights to the stock and moneys thereby assigned to me which Mrs. Horn was entitled to under her agreement with you, it being my intention to carry out the terms of the agreement on her part to be performed.

"June 28, 1881.

"FREDERICK SCHULENBERG."

*Mr. F. A. Baker* for appellant.

I. The case presented by complainant's bill is a simple and meritorious one.

Sarah Horn's right to redeem the 600 shares of stock in the Detroit, Belle Isle and Windsor Ferry Co. was a very valuable right of property. Any one at all familiar with the great beauty, and usefulness to the people of the city of Detroit and vicinity, of the Detroit River, with Belle Isle, and its park, Lake St. Clair, and the St. Clair Flats on the north, and Grosse Isle, Sugar Island, Bois Blanc, and Lake Erie on the south, can readily understand the successful and lucrative nature of the ferry and excursion business in which the complainant and the corporations who succeeded her were engaged.

Under negotiations between complainant and Frederick Schulenberg, which were conducted by Albert Schulenberg, who is the son-in-law of one of the parties and the son of the other, the complainant assigned her rights under the agreement of June 27, 1881, to Frederick Schulenberg. In virtue of this assignment Frederick Schulenberg redeemed the 600 shares of stock and became the owner and holder thereof. The complainant shows that the agreed consideration for this assignment was $200 a month for three years, and the return to her at the end of the three years of $25,000 of the stock at its par value.

Frederick Schulenberg, in his petition for removal to the Federal court, denies that he was to return any of the stock to complainant; but no such defence is interposed to the bill by plea or answer, so that the complainant's case stands on this record as confessed.

It is also worthy of note, that Frederick Schulenberg was not sworn as a witness in his own behalf, and that although Albert Schulenberg was sworn as a witness for his father, he makes no denial of the complainant's case on the merits as stated in her bill.

As far as the merits are concerned, therefore, the complainant is entitled to a decree, and the only question is whether the plea of accord and satisfaction can be sustained.

II. Under the proofs as they stand in this record, the court should hold that the plea of accord and satisfaction is not sustained.

The receipts of March 17, 1886, do not mention the $3000, or any other specific sum or thing as their consideration. On the contrary, they simply recite that ".For a valuable consideration," etc.

It is clear that it is competent to explain a receipt of this kind by oral proof showing what the real consideration actually was, and that a mere receipt is always subject to explanation by parol evidence.

This doctrine is distinctly recognized by this ,court in the second subdivision of the opinion of the court, as prepared by Mr. Justice Brown, in *Fire Insurance Association* v. *Wickham*, 141 U. S. 564, in which the learned justice cites the following cases approvingly: *Simons* v. *Johnson*, 3 B. & Ad. 175; *Lawrence* v. *Schuylkill Nav. Co.*, 4 Wash. C. C. 562; *Payler* v. *Homersham*, 1 M. & S. 423; *Jackson* v. *Stackhouse*, 1 Cow. 122; *S. C.* 13 Am. Dec. 514; *Grumley* v. *Webb*, 44 Missouri, 444; *Price* v. *Treat*, 29 Nebraska, 536; *St. Louis, Wichita &c. Railroad* v. *Davis*, 35 Kansas, 464.

Inasmuch as these receipts do not purport to give the consideration on which they were based, they are not even *prima facie* evidence thereof, and it is just as competent for the complainant to prove that the consideration included a promise to her, as it is for the defendant to prove that the agreed consideration was the $3000, actually paid.

The receipt signed by Sarah Horn left the question of the actual consideration open, and subject to parol proof, so that she is in no sense concluded thereby.

The plea of accord and satisfaction, therefore, cannot be sustained, because the party having the affirmative on that issue has not sustained the plea with a preponderance of evidence.

The minds of the parties did not meet, and the supposed agreement to compromise for that reason fails. *Utley* v. *Donaldson*, 94 U. S. 29, and cases cited.

And further, Frederick Schulenberg was not a party to the

agreement. There is no proof in this record that he or any one authorized to represent him, had anything to do with the settlement, or that he was in any way a party to it, or bound by it. The case calls, therefore, for an application of the familiar doctrine that one party to a contract is not bound unless the other is.

An accord and satisfaction would certainly have to be binding as to both of the parties, in order to be binding at all; and in fact it is the rule as to all contracts that there must be mutuality of obligation. *Dorsey* v. *Packwood*, 12 How. 126.

*Mr. C. E. Warner*, (with whom was *Mr. Levi T. Griffin* on the brief,) for appellees.

Mr. Justice Jackson, after stating the case, delivered the opinion of the court.

The garnishment proceedings on the part of Cuddy, administrator, against Sarah Horn, as the principal debtor, and the Dry Dock Company and Frederick Schulenberg, as garnishees, regularly taken and prosecuted under the statutes of Michigan, were designed to reach and subject to the payment of Cuddy's confessed judgment against Sarah Horn, the claim and demand which she seeks to enforce in the present case. So that the garnishment proceeding involved directly the liability of the Dry Dock Company and of Frederick Schulenberg to the complainant for either $25,000 in stock, which she alleged Schulenberg was to return to her, or any other credits in their hands in her favor.

The proofs taken in the case clearly and fully establish the truth of the matters set up and alleged in the plea, including the complainant's foregoing receipt in full satisfaction of all claims against the Dry Dock Company and Frederick Schulenberg.

As a part of the documentary proof there was produced a stipulation filed in the cause of Sarah Horn against Frederick Schulenberg, in the United States Circuit Court for the Eastern District of Michigan, which cause involved

the same claim upon the part of the appellant against the appellee Schulenberg as is presented in the present case. The stipulation was as follows: "It is hereby stipulated that the bill of exceptions settled and filed in this cause shall be withdrawn, and that the judgment entered herein in favor of defendant shall stand as the final determination of the issue, and that full satisfaction of the same for costs may be entered." This, with other documentary and parol evidence, fully established the truth of the plea, and the plea being thus sustained the court thereupon dismissed the bill. It could not have done otherwise under the well-settled rules of chancery pleading and practice.

In chancery proceedings a plea in bar may be set down for hearing by the complainant upon its sufficiency, or it may be replied to and put in issue. If the latter course is pursued, and the plea is sustained, then, according to the English chancery practice, which formerly prevailed in this court, the bill must be dismissed, without reference to the equity arising from any other facts stated in the bill. *Hughes* v. *Blake*, 6 Wheat. 453, 472; *Rhode Island* v. *Massachusetts*, 14 Pet. 210, 257. This practice has now been modified by Equity Rule 33 of this court, which is as follows: "The plaintiff may set down the demurrer or plea to be argued, or he may take issue on the plea. If, upon an issue, the facts stated in the plea be determined for the defendant, they shall avail him as far as in law and equity they ought to avail him." See *Farley* v. *Kittson*, 120 U. S. 303, 314, 315; *Pearce* v. *Rice*, 142 U. S. 28, 41, 42. But even under this rule, when the plea meets and satisfies all the claims of the bill, it ought, in law and equity, to avail the defendant so far as to require a final decree in his favor.

In the taking of proof upon the issue raised by the replication to the plea, the appellant attempted to show that in addition to the $3000 paid by the appellees in settlement and compromise of all claims and demands against them, or either of them, upon the part of the appellant as already stated, it was understood and agreed that Albert R. Schulenberg, her son-in-law, was to pay her $50 a month and turn over to her

$25,000 of the stock of the Detroit, Belle Isle and Windsor Ferry Company, whenever he should acquire the same from his father, Frederick Schulenberg; and that this part of the agreement had not been performed. This contention is not established by the testimony in the case, but suppose it was? It could not affect the result or show that there was error in the dismissal of the bill which followed from sustaining the plea, for no such question was ever raised or presented by the pleadings.

Again, it is urged by counsel for the appellant that her receipt of March 17, 1886, executed upon the making of the compromise, is open to explanation by parol proof for the purpose of showing what the real consideration was under the rule recognized and applied in *Fire Ins. Co.* v. *Wickham*, 141 U. S. 564. While this may be true in respect to receipts generally, the fact is overlooked that the issue made by the replication was simply the existence of the receipt as set forth in the plea. The complainant, neither in her bill nor in her replication to the plea, raised any question as to the correctness of the receipt executed by her. Her replication, as already stated, simply put in issue the truth of the plea, and that being established, the dismissal of the bill necessarily followed under the authorities referred to. Her claim of a mistake in the receipt was wholly foreign to the issue which she, by her pleadings, had presented for the determination of the court. No such question as she now raises was properly presented in the court below, or is available here.

It is further urged on her behalf that mutual consent of the parties was necessary to the compromise contract, and that there was no such mutuality, inasmuch as she supposed that she was to receive $50 a month from Albert R. Schulenberg. But this is equally unavailable, if such a mistake were shown to exist, for the simple reason that it was not put in issue in any shape by the pleadings. While an accord and satisfaction may be set aside, if it is shown that the parties to the transaction were mutually mistaken in regard to the material facts, such mistake must be set up by proper pleading. It is not available where it is neither averred in the bill, nor referred

to in a plea in bar and a general replication thereto, which merely puts in issue the truth of the plea.

There is no error in the judgment of the court below, and the same is, accordingly,

*Affirmed.*