## CHOUTEAU TRUST CO. v. MASSACHU-SETTS BONDING & INS. CO. *

(Circuit Court of Appeals, Eighth Circuit. August 5, 1924.)

No. 6542.

**1. Subrogation ⬤⟁36—Purchaser of tax bills held liable to surety on contractor's bond for moneys paid contractor after notice of surety's claim.**

Assignee of tax bills issued to sewer contractor, which, after deducting amount due it for loans to contractor, paid balance to him, after it had notice that contractor's surety claimed a lien thereon, *held* liable for expenditures by contractor from moneys so paid for other than claims for which the surety was liable.

**2. Appeal and error ⬤⟁1097(1)—Questions settled on former appeal become law of case.**

Questions settled on former appeal of a case become law of case.

**3. Subrogation ⬤⟁35—Contractor's surety held *not estopped from asserting claim against* purchaser of tax bills issued in payment to contractor.**

Surety on contractor's bond, who acquiesced in manner of handling accounts between contractor and assignee of tax bills, *held* not estopped from asserting such assignee's liability for funds turned over to contractor after notice of surety's claim of a lien thereon.

**4. Equity ⬤⟁427(1)—Decree must be within the issues, and defense not pleaded not available.**

Decree under equity practice must be within the issues, and where contractor's surety, suing assignee of tax bills for amounts which it permitted contractor to divert, alleged its bond covered only claims for labor and material going into work and answer alleged all proceeds were applied to such claims, defense that bond covered other claims was not available.

**5. Municipal corporations ⬤⟁347(2)—Surety on contractor's bond not liable for nonlienable claims.**

Surety on public improvement contractor's bond given under Rev. St. Mo. 1919, § 1040, and conditioned for payment of material used and for labor performed, *held* not liable for claims which would have been nonlienable if existing against a private individual.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Suit by the Massachusetts Bonding & Insurance Company against the Chouteau Trust Company. Decree for plaintiff, and defendant appeals. Affirmed.

John T. Hicks, of St. Louis, Mo. (F. L. Cornwell, of St. Louis, Mo., on the brief), for appellant.

Walter H. Saunders, of St. Louis, Mo. (John S. Leahy and Lambert E. Walther, both of St. Louis, Mo., on the brief), for appellee.

Before KENYON, Circuit Judge, and AMIDON and SCOTT, District Judges.

* Rehearing denied November 10, 1924.

KENYON, Circuit Judge. This is the second appearance of this case in this court. The prior decision will be found in 264 Fed. 793. Parties for convenience will be designated as in the trial court, appellee here being plaintiff there. In brief, this is an action in equity brought by plaintiff in the District Court of the United States for the Eastern District of Missouri on the 13th day of January, 1919, against defendant, Chouteau Trust Company, to enforce a claimed right of equitable subrogation and for an accounting. On the former trial in the District Court the action was dismissed at the close of plaintiff's testimony. Upon appeal the case was remanded to the District Court for a fuller hearing in accordance with the views indicated in the court's opinion. Upon the retrial the court rendered a decision in favor of plaintiff, and referred the matter to a master for an accounting, who duly filed his findings and report, recommending judgment for plaintiff against defendant in the sum of $3,315.59, with interest at 6 per cent. per annum from January 15, 1919, and costs. Exceptions filed to the master's report were overruled, the report confirmed, and final decree entered, from which defendant prosecutes this appeal.

The facts substantially are as follows:

In the early part of 1916 Cooney-Garland Company, a copartnership, having made a contract with the city of St. Louis for the construction of what was known as the Russell Place joint district sewer, made an arrangement with defendant, Chouteau Trust Company, whereby the trust company was to make purchase of special tax bills to be issued by the city of St. Louis to pay for the construction of said sewer, and was to make advancements and loans to said contractors for use in the performance of their contract. Plaintiff was familiar with said arrangement by virtue of a communication addressed to it by defendant. Plaintiff signed the contractor's bond as surety, knowing of defendant's arrangement with the contractor; the same being executed to the city of St. Louis in the penal sum of $12,063.43. This bond was given under the provision of section 1040, Revised Statutes of Missouri of 1919, which required contractors of public work to be performed for the state, county, or city to execute such a bond. Defendant from time to time, up to the completion of the work provided for by the contract, advanced money to the contractor upon estimates of the engineering department of the city; the

contractor executing notes to the trust company as evidence thereof.

In July, 1917, representatives of plaintiff at St. Louis brought to the attention of defendant its desire to make arrangement for the disposition of the funds to be realized from the special tax bills then about to be issued by said city to the contractor, and which were to be transferred to defendant under its contract for purchase and advancement of loans. July 16, 1917, a written notice was sent out by appellee (plaintiff), addressed to some of the city officials, defendant and the contractor with reference to the proper distribution of the funds to be realized from the tax bills. Defendant's copy of this letter was received on August 3, 1917. At the time of the receipt thereof there were claims due and unpaid, incident to the performance of the contract for which the special tax bills were issued, exceeding $7,000. These claims were for material furnished and used in the construction of the sewer, and judgment was subsequently rendered therefor against plaintiff as surety on the bond, which it paid. At the time of the hearing before the master other suits were pending against plaintiff as surety for an amount in excess of $1,000.

The face value of the tax bills received by appellant was $33,359.39. They were purchased at 90 cents on the dollar, leaving the amount chargeable against the appellant, $30,023.46. Defendant credited to itself from this amount what was due it on the notes of the contractor, amounting to $20,400 and interest to August 3, 1917, in the sum of $454.34, leaving a balance August 3, 1917, of $9,169.12 in the hands of the defendant. This balance was subsequently turned over by appellant to the contractor and by it deposited in its bank account with defendant. Checks were then drawn by the contractor against such account until it was all disbursed. Of the amounts drawn, $5,728.25 was to the Blackmer-Post Pipe Company for sewer pipe used in the sewer, and $125.28 to the Banner Iron Works for material used and furnished in the work.

The master and the lower court found that these two items constituted proper credits in favor of defendant, as they served to liquidate indebtedness for which plaintiff would be liable on the surety bond. There is no appeal from this holding. Consequently the correctness thereof is not before us. Deducting these two items, then, from the amount on hand August 3, 1917, leaves a balance of $3,316.59. This fund was used to pay certain notes for money loaned by George Baptiste, $1,000; Mary Garland, $500; and J. Anderson, $700—the same having been borrowed by the contractor to pay for labor performed on the work. $353 was also paid Seneca C. Taylor for hay and grain used in feeding teams on the work, and $250 was paid Frank J. Quinn for legal services rendered in connection with the contract.

The master held, and in that he was sustained by the trial court, that these later items, making up $3,315.59 of the fund, were claims that could not have been asserted as against the plaintiff, and that defendant, by turning over, after the time of notice to it of plaintiff's claims, the funds upon which plaintiff had an equitable lien, was responsible to plaintiff for these disbursements. Section 2 of said decree is as follows:

"(2) That defendant is declared to be a trustee and required to account to plaintiff for the proceeds of all special tax bills issued in favor of said contractor in payment for said construction work, to the extent of the disbursements heretofore made, or which plaintiff will hereafter be required to make, under said bond, and that plaintiff has an equitable lien on said tax bills and the proceeds thereof, which attached as of the date of the execution of its bond."

We consider first the scope and effect of the former opinion. This court held that, under the bond signed by plaintiff, the undertaking was to indemnify the city against what the court termed "lienable items," which would otherwise become a charge against its property, and that plaintiff would not ordinarily be liable for any claims against the contractor, although incurred in the performance of the contract, which were not of that nature. The term "lienable items," which is used in the former opinion and also by the trial court, is used as a mere descriptive or designative term, referring to those claims for work performed and material furnished which would be lienable if existing against a private individual. As the work is a public one, the claims are not strictly lienable, and the statute of Missouri is to protect the laborer, materialman, the city, and the public, by providing for a bond in place of such security as might otherwise be sought by attaching a lien to property. Such statutory provisions are quite common in the various states, and the federal government also seeks by statutes to protect persons furnishing material and labor for the construction of public works.

The Supreme Court, in Equitable Surety

Co. v. United States of America, to the Use of McMillan, 234 U. S. 448, 456, 34 Sup. Ct. 803, 805 (58 L. Ed. 1394), speaking of such bonds as to public work says: "The public is concerned, not merely because laborers and materialmen (being without the benefit of a mechanic's lien in the case of public buildings) would otherwise be subject to great losses at the hands of insolvent or dishonest contractors, but also because the security afforded by the bond has a substantial tendency to lower the prices at which labor and material will be furnished, because of the assurance that the claims will be paid."

[1] This court also held that the plaintiff had no right of action based upon the assignment contained in its printed application for a bond; that there was no element of usury in the transaction between the defendant and the contractor; that the right to be reimbursed for its advancements, with interest, made with the full knowledge of the plaintiff, gave defendant as to that question a superior equity to the equity of plaintiff; that the defendant was protected from liability to the extent that the proceeds of the tax bills in excess of defendant's own claims, were applied in extinguishment of claims for which the surety would be liable; further that defendant had notice and knowledge, before it made the disbursements over and above its legitimate claims, of the claim of plaintiff as surety, and that if this disbursement of the amount above its legitimate claims was without authority, and prejudicial to plaintiff's rights, recovery could be had against defendant, and that the disbursement to the contractor would be no defense; that the principal (contractor) paid out money to the prejudice of the surety, and that defendant put it in the power of the principal so to do by turning over to it the balance of the tax bill funds after notice of the surety's claim; that the right of the surety to subrogation attached from the date of the bond—and the court said: "This right could not be displaced by the appellee simply under its contract of purchase with the Cooney-Garland Company, so far as the balance of purchase money is concerned, which was turned over to the contractor by appellee after appellee was put upon notice of the probable claim of appellant. The fund was then still in its hands, and its duty was to retain it until the respective rights of surety and principal could be ascertained."

The court further held that plaintiff was subrogated, not only to the rights of the contractor in the funds due under the contract, but also to the rights which the creditors might have asserted. The ultimate conclusion of the court seems to be that the equity of the plaintiff was superior to any equity of the defendant after notice to it of plaintiff's claim; that plaintiff, having paid out more than $7,000 for labor and material, for which the principal was primarily responsible, was entitled to an equitable lien upon the fund in the hands of the Chouteau Trust Company derived from the tax bills for the sums paid by it for labor and material entering into the construction of the sewer; that defendant's act in disbursing such funds or permitting them to be disbursed was to the prejudice of plaintiff. Cox v. New England Equitable Ins. Co., 247 Fed. 955, 160 C. C. A. 655; Columbia Digger Co. v. Rector et al. (D. C.) 215 Fed. 618; Hardaway v. National Surety Co., 211 U. S. 552, 29 Sup. Ct. 202, 53 L. Ed. 321; Henningsen v. United States Fidelity & Guaranty Co. of Baltimore, Md., 208 U. S. 404, 28 Sup. Ct. 389, 52 L. Ed. 547; Prairie State Bank v. United States (United States v. Hitchcock) 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412.

[2] These questions settled in the former appeal have become the law of this case. Thompson v. Maxwell Land Grant & Railway Co., 168 U. S. 451, 18 Sup Ct. 121, 42 L. Ed. 539; Supervisors v Kennicott, 94 U. S. 498, 24 L. Ed. 260. This case is therefore reduced to very narrow limits. The court left open for further consideration the question of estoppel and remanded the case for a fuller hearing.

Defendant claims an estoppel, and relies upon defendant's letter to plaintiff dated July 6, 1916, delivered to Graham and by Graham to plaintiff prior to execution of the bond; the conversation of plaintiff's representative, Lamb, with St. Jean, defendant's secretary and treasurer, July 10, 1917, in which Lamb was told that the contractor would distribute its funds and pay its bills by check in the usual way; the letter of plaintiff's resident manager dated July 16, 1917, with reference to their expectation that the contractor would comply with its contract and requesting final payment to be deferred until satisfactory arrangements could be made for the distribution of the funds; the acquiescence of plaintiff in the announced purpose of defendant to take the tax bills, and the announced practice and intention of the contractor to pay its bills by check in the usual way; the settlement between defendant and the contractor on August 4 and 5,

1917, delivering to it of the balance due, and its disbursement of that balance without interference on the part of plaintiff.

[3] We are satisfied the evidence in the record does not justify the claim of estoppel as to the amounts disbursed after notice of plaintiff's claim. The letter of July 6, 1916, from defendant to plaintiff was merely a statement of the way the business would be carried on, and that appellant (defendant) was planning to buy the tax bills and also to loan the contractor money. Subsequent to this time and before the tax bills were received by defendant plaintiff advised defendant of its claim and the situation with relation to the matter, and that there were unpaid claims for materials used on the work for which plaintiff as surety on the bond was liable, and notified defendant of its desire that the fund should not be disbursed. There was no acquiescence on the part of plaintiff in the action of defendant. Defendant had full knowledge of the situation. It knew of plaintiff's claim as a surety. It had notice, both oral and written. Under the law it was bound to know, under such notice, that the claim made by plaintiff was for an equitable lien as to the fund in its hands. After such notice it disbursed the same at its hazard. The plaintiff was under no obligation in order to preserve its rights to explain the nature of its claim every day to defendant, or to bring an action against defendant to prevent the distribution of the fund. It could assume that defendant after notice thereof would recognize the legal situation with reference to its claim. Further, the lower court held the defendant to be a trustee for the benefit of plaintiff after it received notice of plaintiff's intention to assert its rights in the tax bills soon to be transferred by the city to defendant. With this holding we are in entire accord. As such trustee it violated its duty. We see no element of estoppel applicable to the situation as to the disbursements made after notice to defendant of plaintiff's alleged rights.

Another question is suggested by defendant in its brief, viz. that the contract between the contractor and the city, which was guaranteed by plaintiff, controls the liability as to the contractor's creditors; that the lien laws of the state of Missouri have nothing to do with it, and that defendant can predicate a defense to plaintiff's action because of the amounts paid on the notes given for money advanced to carry the pay roll and the other items in question; in other words, that the bond covers claims, whether lienable

or not, as the term has been heretofore used, and that therefore the surety thereon was not prejudiced by the payments in controversy here.

[4] In the first trial of the case the plaintiff contended by its pleading that the bond was a Missouri statutory bond and limited to claims for labor and material actually going into the work. More than once in defendant's answer it is alleged that all the proceeds of the special tax bills were applied to the payment of labor and material used in the construction of said sewer. The case was tried on the issue so raised by the pleadings. No new pleadings were filed on the present trial and this new question now presented is not within the issues made by the pleadings nor within the findings of fact of the master approved by the trial court. That the decree under the equity practice must be within the issues is well established.

[5] The defense that the bond given to the city on which plaintiff was surety covered claims arising, not only for labor and material entering therein and designated as "lienable claims," but also those resulting from other matters connected with the contract and the work, might have been pleaded, but it was not. We are satisfied that under the condition of the record the matter is not available here. Horn v. Detroit Dry Dock Co., 150 U. S. 610, 14 Sup. Ct. 214, 37 L. Ed. 1199, Thompson v. Maxwell Land Grant Co., 168 U. S. 451, 18 Sup. Ct. 121, 42 L. Ed. 539. However, the question of procedure is not of particular importance, as we view the matter. The Missouri statute referred to has a provision as follows: "And such bond, among other conditions, shall be conditioned for the payment of material used in such work and for all labor performed in such work, whether by subcontractor or otherwise." The bond under this statute is clearly to cover claims for labor and material actually going into the construction of the work. It evidently was so regarded by both parties to the action. The former decision held plaintiff was not liable for claims for labor and material not going into the work, or money expended for other purposes not resulting in a reduction of liability on the bond. This construction of the bond is res adjudicata. Were it not, we would have no different mind thereon from that expressed by the court in its former decision.

The substance of the whole matter is that defendant, with full notice of plaintiff's claimed rights, turned over to the principal on the bond, either with careless or contemp-

tuous disregard for such rights, the balance in its hands derived from the tax bills, thus making possible the disbursement for non-lienable claims of such funds by the contractor, to the manifest prejudice of plaintiff which had theretofore paid claims for material going into the sewer, liability for which was primarily upon the principal.

The decision of the trial court was correct. The decree should be affirmed. It is so ordered.