J. R. MEADE & COMPANY, Plaintiff,

v.

BARRETT & COMPANY, Inc., et al., Defendants.

The SPERRY & HUTCHINSON CO., Defendant-Third Party Plaintiff-Respondent,

v.

UNITED BONDING INSURANCE CO., Third Party Defendant-Appellant.

No. 33592.

St. Louis Court of Appeals, Missouri.

March 24, 1970.

---

Francis L. Kenney, Jr., Bernard A. Reinert, Kenney & Reinert, St. Louis, for third party defendant-appellant.

Charles H. Rehm, Clayton, for defendant and third party plaintiff-respondent.

CLEMENS, Commissioner.

The issue here is whether a surety for a building contractor, having given an unconditional bond to the owner guaranteeing payment of the contractor's labor and material bills, is relieved of liability to the owner when the owner, knowing of unpaid labor and material bills, pays the contractor in full.

This issue comes up as the by-product of a mechanic's lien suit. Therein several subcontractors of the general contractor, Barrett & Company, Inc., (Barrett), got $8,263 in judgments and liens against the owner, Sperry & Hutchinson Co. (S & H), and its new store building in St. Louis County. By its third-party petition S & H sought judgment over against the United Bonding Insurance Co. (United) who had guaranteed payment of Barrett's labor and material bills. Neither the construction contract nor United's bond made any pro-vision for S & H withholding payment from Barrett after completion of construction. In defense to S & H's claim United pleaded that S & H had breached the bond when it paid Barrett in full, knowing Barrett had not paid for all labor and materials. The bond imposed no such condition on S & H. The trial court struck this defense from United's third-party answer and upon trial gave S & H judgment over against United for the $8,263 of lienable accounts, and also judgment for an $826 ten per cent penalty and $3,000 attorneys' fee for vexatious delay. United appeals.

S & H solicited construction bids for a store building in St. Louis County in November, 1966 and Barrett's bid was accepted. He had been the successful bidder for some forty S & H store buildings during the three preceding years. No performance bonds were required the first two years and at the end of each job Barrett had to make proof of payment of subcontractors before S & H would pay Barrett the contract price. Barrett complained this requirement unduly delayed S & H's payments, which were needed promptly to pay Barrett's subcontractors for labor and materials. S & H assured Barrett payment could be speeded up if Barrett posted bonds. In October, 1965 Barrett began posting bond on each S & H contract; thereafter no proof of payment to subcontractors was required. Invoices were submitted, S & H would pay promptly and Barrett would use the money to pay subcontractors.

December 2, 1966 Barrett made a written $17,831 bid to S & H, agreeing therein to furnish a construction performance bond and upon S & H's acceptance Barrett delivered United's bond to S & H. It declared: "Now Therefore, the condition of this obligation is such that *if* the Principal [*Barrett*] * * * *shall pay* all persons who have contracts directly with the Principal *for labor or materials,* then this obligation shall be null and void, otherwise it shall remain in full force and effect." (Our emphasis).

Barrett completed construction to S & H's satisfaction in March, 1967 and billed S & H for the $17,831 contract price. March 27th S & H paid Barrett in full. April 17th, three weeks later, S & H learned that Barrett still owed substantial amounts to its subcontractors and on May 1st S & H notified United of Barrett's unpaid accounts. June 15th United denied liability on the ground S & H had paid Barrett without first determining that Barrett had paid for all laborers and materialmen. Barrett's subcontractors soon began mechanic's lien procedures against S & H and this lawsuit followed, ending with judgments and liens against S & H but in favor of S & H against United.

■ United's only attack on the issue of its liability is that the trial court erred in striking its affirmative defense from its answer to S & H's third-party petition. Therein United had answered it was relieved from liability to S & H because S & H, with knowledge of Barrett's outstanding labor and material bills, had paid Barrett the full contract price instead of diverting part of it to Barrett's unpaid laborers and materialmen. The record does not justify this assumption that S & H had the duty to withhold payment from Barrett until assured that all subcontractors had been paid.

United relies primarily on the case of Chouteau Trust Co. v. Massachusetts Bonding & Ins. Co., 8 Cir., 1 F.2d 136. The case is not in point. It concerns a surety's rights against a contractor's assignee under a public contract, not a surety's rights against an owner under a private contract. The only Missouri case cited by United is National Surety Corporation v. Fisher, Century Indem. Co., Mo., 317 S.W.2d 334, but it is not in point. It too concerns a surety's rights against a contractor, not as here a surety's rights against an owner. The case not only fails to support United's claim but refutes it, saying at l. c. 345: " * * * when sums earned under the contract are paid generally to the contractor,

such funds are thereby freed of any equity or right of subrogation in the surety."

Actions on contractors' bonds come in many varieties, differing widely as to parties litigant, terms of the bonds and construction contracts, purposes of the bonds, and nature of defaults. (See the 138 topics in the table of contents to Contractors' Bonds, 17 Am.Jur.2d, pp. 187–191). From a welter of cases from other jurisdictions, none like the one here, United has culled sweeping legal phrases such as "a surety must be dealt with in fairness and good faith", "wrongful act of payment" and "equitable lien." To these catch phrases United adds such argumentative platitudes as "bad faith", "contemptuous disregard" and "unwritten rights and duties." All this obscures the nature of United's liability.

For example, United relies on § 33, Contractors' Bonds, 17. Am.Jur.2d, headed: "Failure to withhold payments as required by contract, bond, or statute." United thus ignores the fact that here neither the construction contract nor its bond required or authorized S & H to withhold payment from Barrett. United also fails to state that § 33 is a qualification of the preceding § 31 which cites Noonan v. Independence Indemnity Co., 328 Mo. 706, 41 S.W.2d 162, 76 A.L.R. 931, in support of the general rule: "Generally speaking, and in the absence of any express provision to the contrary in the bond, payment, in accordance with the terms of the construction contract, made by the owner to the contractor does not release the surety on the contractor's bond from liability to the owner."

Our case fits snugly within that general rule. The construction contract gave S & H no authority to withhold funds from Barrett upon completion of the contract. When Barrett's work was done the contract obligated S & H to pay Barrett. See 127 A.L.R. 34–36 annotating cases holding sureties liable where construction contracts, as here, are silent as to time and conditions of payment. This annotation cites Litchgi

v. Gottlieb, 134 Mo.App. 237, 113 S.W. 1134 [2]:

"In a bond given for the performance of a written contract, the contract is as much a part of the bond as if written in it, and it seems to us that the surety has a legal right to insist upon the performance of the very terms of the contract, and that stipulations in the contract in respect to the time and terms of payment are for his benefit, and any substantial departure therefrom, without his consent, will discharge him from his obligation. But the contract [here] is silent as to the time when payment should be made, and, while the contractor could not demand payment until he had completed the building, there is no provision in the contract prohibiting payment at any time, and it seems to us it would enlarge the contract, and import into it stipulations which the parties did not choose to incorporate in it, to hold that, for the reason plaintiff paid a part of the contract price before it was due, the surety was discharged. *The defense is not bottomed on a departure from any stipulation or provision written in the contract, and for that reason should fail.*" (Our emphasis).

For other cases holding that a surety on a contractor's bond is not released because the owner made payments to the contractor according to terms of the construction contract see Chapman v. Eneberg, 95 Mo.App. 127, 68 S.W. 974 [2]; Dorr v. Bankers' Surety Co., Mo.App., 218 S.W. 398 [3]; Price v. Seibel, Mo.App., 253 S.W. 212 [7]; and State ex rel. Seibel v. Trimble, 229 Mo. 164, 253 S.W. 215 [4], quashing certiorari therein.

We hold that United's purported affirmative defense did not relieve it from liability to S & H on its bond, and was properly stricken.

As said, the trial court awarded S & H an $826 ten percent penalty and $3,000 attorneys' fee for United's vexatious refusal to pay. United claims error, contending it defended in good faith since the case presented a question of law not previously decided. We disagree. United had, for a fee, expressly and without reservation promised to indemnify S & H for Barrett's unpaid labor and material expense. When Barrett defaulted S & H promptly notified United. Forty-three days later United denied liability on the ground S & H had failed to determine that Barrett had paid its subcontractors before paying Barrett the contract price. Three months after notice of Barrett's default United again denied liability, this time on the ground S & H had prior knowledge of Barrett's default when S & H paid Barrett. Neither ground was a defense to United's express agreement to pay S & H. Had such a procedure been contemplated by S & H and Barrett they would not have needed the surety bond. No Missouri case supported United's denial of liability. To the contrary, the *Noonan, Litchgi, Chapman, Dorr, Price* and *Seibel* cases, supra, each fixed United's liability to S & H under its bond. Ours is not a case where the legal question "is sufficient to raise in the mind of a reasonable man doubt as to liability." Glosch v. Central Life Ins. Co. of Illinois, Mo.App., 176 S.W.2d 46 [5]. This, since the mere presence of some legal question does not protect a surety from the statutory penalty. Exchange Bank of Novinger v. Turner, 321 Mo. 1104, 14 S.W.2d 425 [14]. United's "good faith" defense is refuted by the case of Willis v. American National Life Insurance Company, Mo.App., 287 S.W.2d 98 [14, 15], where the court declared: " * * * defense of good faith in respect to a question of law is limited to those cases where the insurer has *reasonable grounds* for believing the law will preclude the recovery on the part of the insured. In other words, there must be an open question of law, and an 'honest error' in judgment as to the law will not be accepted as reasonable where the question has been definitely settled. In such instance the insurer is charged with knowledge of the law in respect to its liability." See also Hampe v. Metropolitan Life Ins. Co., Mo.App., 21 S.W.2d 926 [6, 7].

In its Points Relied On United also claims error in assessing the penalty because the precise amount of its liability was unknown and because the amount of attorneys' fees awarded was not shown to be reasonable. Neither contention is supported by citation of authority or developed in argument. Therefore, each is deemed abandoned. Civil Rule 83.05(a), (4), V.A.M.R.; Holt v. Queen City Loan & Investment Inc., Mo., 377 S.W.2d 393 [13].

Judgment affirmed.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, judgment is affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.