Rosa **POLLOCK**, Plaintiff-Respondent,

v.

Dale H. **BOUSE** et al., Defendants-Appellants.

No. 53350.

Supreme Court of Missouri,
Division No. 1.

June 10, 1968.

Motion for Rehearing and Transfer to Court
En Banc Denied July 8, 1968.

G. C. Beckham, Steelville, for plaintiff-respondent.

John W. Waller, Sullivan, for defendants-appellants.

LAURANCE M. HYDE, Special Commissioner.

Action to determine title to real estate and to reform deeds. The court found for plaintiff on the basis of adverse possession, so did not order reformation of the deeds in plaintiff's chain of title. Defendants have appealed from the decree entered.

The land involved is 4.92 acres along the east side of the NW¼ SE¼ Section 10, Township 41, Range 4, in Franklin County, lying east of the county road (now State Route AN), which ran north and south through this 40-acre tract, sometimes hereinafter referred to as the strip. In 1920, Henry Eickhoff owned the north half of the southeast quarter of Section 10. On October 4, 1920, he conveyed to Caric Mesger land described as follows:

> "The Northeast Quarter of the Southeast Quarter of Section 10, Township 41 North, Range 4 West, making the county road the West line, containing 40 acres, more or less."

Caric Mesger testified that when he purchased this tract of land from Eickhoff, he understood that he was acquiring title all the way over to the county road. Mr. Mesger further testified that as soon as he purchased this tract of land from Mr. Eickhoff he went into possession of the land all the way over to the county road and used it for farming and he claimed to own it. Plaintiff's title comes through the grantees of Caric Mesger. However, the deed to plaintiffs from subsequent owners, made September 22, 1937, described only the NE¼ SE¼ and did not mention the county road. This deed was to plaintiff and her husband who died before this action was commenced. Plaintiff's daughter (only child of plaintiff and her husband) has conveyed her interest to plaintiff. However, when Mesger conveyed the land to one Bartel, in 1921, his deed did contain the provision "making the county road the west line." Mesger testified that Bartel took possession and used the land up to the county road. However, subsequent deeds in plaintiff's chain of title (1923, 1927, 1930) did not mention the road, describing only the NE¼ SE¼. Mesger had moved away from the neighborhood and was not

familiar with the use of the strip by subsequent owners.

The court found that plaintiff "and those under whom she claimed title, were in absolute, notorious, actual and adverse possession, of * * * all that part of the northwest quarter of the southeast quarter of Section 10, Township 41 North, Range 4 West, which lies east of the county road as same was located on the 4th day of October, 1920." Supreme Court Rule 73.01 (d) V.A.M.R. provides on appeal from a trial by the court upon the facts without a jury: "The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The issue of adverse possession on which this case was decided mainly depends on the credibility of the witnesses; and rather than the finding of sufficient adverse possession being clearly erroneous, we find the evidence strongly supports it. See City of Kirksville v. Young, Mo.Sup., 252 S.W.2d 286, 288, and cases cited.

It seems apparent from the record that it was not really known that the county road was west of the west line of NE¼ SE¼ until a survey was made after 1960 by the State Highway Department for the purpose of making the county road a state road, not long before defendants bought the NW¼ SE¼. Plaintiff and her husband had lived on land adjoining this disputed strip since 1921 and had an interest in the NE¼ SE¼ since 1927 when plaintiff's husband with others took title. (They took it over from an owner who could not pay a note they had signed with him.) Plaintiff and her husband took the whole title in 1937. Plaintiff said from 1927, as to the disputed strip, they farmed the land "plumb up to the road." She said, "We would put it in corn, then in the fall we would put it back in wheat and grass. * * * We never pastured, just hay and grain." This strip originally was enclosed by a fence with the rest of their farm. Later the fence along the road was taken down because it was old and because they did not pasture the

land. This strip was described as having woods right in the northeast corner; then south of it "a field of about two and a half acres"; then a field of about an acre and "a little strip of woods on the south." Plaintiff and her husband claimed to own this land all the way to the road at all times after they acquired title to the NE¼ SE¼.

After obtaining the sole title in 1937, plaintiff said Mr. Pollock "had a soil test, had it limed. We hauled a lot of manure on it. Fertilized it and brought it up to soil test and had it terraced" in October 1947. The terraces are still visible. Plaintiff said she picked corn near the road before they left the farm in December 1960. When they left the farm, they rented it to two neighbors, George and Ralph Lurhring. Mr. Pollock died in 1964. The Lurhrings farmed the land all the way to the road. They got hay off of the strip the first year, 1961, but the second year, 1962, it had grown up in weeds and they did not cut it. Defendant then told them that he owned it but permitted them to go across it to plaintiff's other land. Plaintiff's daughter, Mrs. Lewis Rutz, remembered the disputed strip since the early Thirties and said she had seen her father plowing, planting crops and mowing hay on it up to the county road. She had seen her mother (plaintiff) working with him on it and said they claimed to own it. She was married in 1941 and she and her husband lived there for about three years and help run the farm. Lewis Rutz, plaintiff's son-in-law, said he and his wife lived on the farm, 1941–1944, and that he took down the fence along the county road because it was in bad condition and they did not pasture livestock on that part of the place. He said the strip was good farm land; that they farmed it all the way out to the road; that while he was there it was in wheat and lespedeza and then in corn. He said after he and his wife left the farm, they went back to visit at least every two weeks until 1960 when plaintiff and her husband left the farm; that they continued to farm this strip all the way out to the road; and that besides the visits he would

"go there to help thresh, help gather corn, help them put up hay * * * two or three times a year" and that they were using all of the strip. He described the terraces on the strip as follows: "The main top terrace started * * * along the roadway * * * and went down * * * to the edge of the woods. * * * Another terrace came in below it and crossed over and into the woods." There were others partly destroyed because defendant has "gone straight across it instead of farming with it." A neighbor, Jesse L. Taylor, said plaintiff's husband had been farming the strip since 1927; that he had operated a threshing machine and done custom work for the Pollocks on the strip. Another neighbor, Ted Piezuch, said plaintiff and her husband had been farming the strip for 40 years and that he had helped them thresh wheat on it in 1940. The County Surveyor, B. E. Hammer, made a survey before the trial and said terraces on the strip continued on down into the field east of there beyond the west line of the NE¼ SE¼.

Defendants' evidence was that they and their grantors had paid the taxes on the NW¼ SE¼; and that they bought it in February 1962. All deeds in defendants' chain of title from Eickhoff described the NW¼ SE¼. The real estate broker who handled the sale said he had no knowledge that anyone was making a claim to any of the land east of the road. However, he said there was nothing on the ground to show the west line of the plaintiff's land east of the road and he could see it was a hay field with red clover although it was grown up in weeds; that he could see the terraces built on the contour that did not break at the east boundary of the strip; and that there physically was nothing to indicate there was a recognized division line between the strip and the rest of plaintiff's farm east of it. In 1963, defendants put up a one wire fence on the line shown him by the previous owner. It was the first fence that was ever there.

Defendant Dale Bouse saw the terraces that run to the north into the woods. His wife stopped plaintiff's tenants from cutting hay on the strip but they were allowed to take it that first year. Defendant Bouse admitted there was nothing on the ground to show there had ever been a fence or other division between the strip and plaintiff's land east of it and that terraces ran across the line where he put up his fence. He did claim that his grantor had cut wood in the timber on the strip.

Defendants citing Gross v. Watts, 206 Mo. 373, 104 S.W. 30, 36, say, "[A] deed or instrument lying outside of the purchaser's chain of title imports no notice to him," relying also on Sec. 442.390, RSMo, V.A. M.S., in support of this principle. Defendant also cites the following statement from Constant v. Almus, Mo.Sup., 281 S.W. 26, 29: "The rule is that, where land is wild and unimproved, and the owner's deed is recorded, and no one else is shown to have been in the actual possession of it, the possession follows the title." The trouble with this is that the land herein involved was not "wild and unimproved." Instead it had been improved by building terraces, fertilizing and cultivating. Furthermore, the evidence is overwhelming that plaintiff and her husband had been in possession farming it since 1927 and claimed it and used it all the way to the road as sole owners from 1937 to 1960, then rented it to tenants as part of their farm when they moved from this farm. See Sec. 516.010, RSMo, V.A.M.S., Limitations. Although the true west line of NE¼ SE¼ was not known to plaintiff and her husband, the evidence shows their claim to the road as their boundary was unequivocal. As we said in Bell v. Barrett, Mo.Sup., 76 S.W.2d 394, 397: "[T]he determining factor is not what the encroaching owner knew about the true boundary line, but what he intended to unequivocally claim was his boundary line." See also State ex rel. Edie v. Shain, 348 Mo. 119, 152 S.W.2d 174, 176.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by HYDE, Special Commissioner, is adopted as the opinion of the court.

All concur.