**William BOYD, Plaintiff-Respondent,**

v.

**Eliza BOYD, Defendant-Appellant.**

**Nos. 33470–33675.**

St. Louis Court of Appeals, Missouri.

Sept. 22, 1970.

Motion for Rehearing or to Transfer to

Supreme Court Denied Oct. 19, 1970.

Milton F. Napier, St. Louis, for defendant-appellant.

Raymond Howard, St. Louis, for plaintiff-respondent.

DOWD, Judge.

The plaintiff filed suit for divorce against his wife, who countered with a cross-bill for separate maintenance. Defendant later amended her prayer and asked for a divorce and the custody of the two minor children. After a protracted hearing, Judge Robert L. Aronson awarded the plaintiff the divorce but awarded the defendant the custody of the two children. The court also ordered the plaintiff to pay $15.00 per week per child for child support and an additional $350.00 for attorney fees. The court granted the plaintiff reasonable visitation and temporary custody of the two children on Sundays from 1:30 p.m. to 5:30 p.m. effective immediately to one

child and effective as to the other child when she reached age of five years. Defendant appealed.

Defendant also appealed from a judgment entered by Judge Franklin E. Reagan allowing defendant $150.00 as attorney fees on appeal. Both appeals are consolidated here. We shall consider the appeal on the attorney fees first.

The transcript on this appeal shows that on February 3, 1969 defendant filed a Motion for Costs, Expenses and Attorney's Fees In Re Defendant's Appeal. The transcript then shows that this motion was ruled on as follows:

"DEFENDANT'S MOTION SUSTAINED, IN PART

"Thereafter, and on June 13, 1969, Defendant's Motion for Attorney Fees and Expenses Pending Appeal, was heard and sustained in part; plaintiff ordered to pay Defendant the sum of $150.00 as attorney fees on appeal."

Then, defendant filed another motion asking for a hearing on the motion on which the court had ruled on June 13, 1969 or in the alternative asking for a new trial. The transcript does not show a ruling on this second motion.

■ Defendant now contends on this appeal that the award of $150.00 for attorney fees on appeal is inadequate and that the defendant was denied a hearing on this motion. We reject defendant's contentions on two grounds. First, the transcript shows that the motion was heard by the court. Second, the transcript shows that no evidence was offered by the defendant to support this motion. No evidence as to the financial conditions of the parties was introduced by defendant, nor was there any evidence as to the costs of the appeal or as to the value of the services to be rendered by defendant's attorney. It must be noted that this motion was being heard by Judge Reagan who did not hear the divorce trial. So, it cannot be said that Judge Reagan

was familiar with the case, and the amount of legal services to be performed by defendant's attorney on appeal. Therefore, there is nothing before us which could be examined to determine the propriety of the trial court's discretionary action. Copenhaver v. Copenhaver, Mo.App., 402 S.W.2d 612 [7].

■ Appellant's second motion filed on June 27, 1969 asking for a hearing on this motion was too late. The court had already heard and ruled on this motion. The judgment granting defendant $150.00 as attorney fees is affirmed.

Defendant contends on the appeal of the divorce case that the court erred in awarding plaintiff a divorce because the evidence showed that plaintiff was not entitled to a divorce and that the award for the support of the children was inadequate and that the trial judge was partial. Defendant also contends that the court erred in not admitting a letter from plaintiff's former employer which shows the reason for his leaving that employment.

The transcript consists of four hundred and twelve pages of conflicting testimony. Plaintiff's testimony was as follows. Plaintiff, a teacher, and defendant were married on February 10, 1962 when he was twenty years old. There were two children born of the marriage whose ages were 6 years and 2½ years at time of trial. The parties were separated six times before their final separation in August of 1966. Each time they were separated the defendant left plaintiff. At the time of trial, defendant and the two children were living with her mother.

The parties had financial troubles and without plaintiff's knowledge, defendant made loans for $748.10 and $1,100.00 and signed plaintiff's name to the loan agreements and that plaintiff was sued on the $1,100.00 loan. Defendant refused to tell plaintiff the purpose of the two loans. Defendant cashed plaintiff's savings bonds without his permission. Defendant was frequently seen by plaintiff in the company of

another man in a white Cadillac and in a taxicab. Two other witnesses testified that they had seen defendant with another man in a white Cadillac. On another occasion defendant was seen by a witness in a cocktail lounge dancing and holding hands with another man. Defendant nagged plaintiff constantly and embarrassed him in the presence of his family. Defendant was an untidy housekeeper. When defendant managed the home finances she failed to pay the utility bills.

On occasions defendant kept a knife under her pillow and on one occasion she had a scissors under her pillow and told plaintiff that he "had better not go to sleep." Plaintiff took the knife and scissors from defendant and received a cut on his neck when he took the knife from her.

Other witnesses who were related to plaintiff testified that defendant was an untidy housekeeper and had "raised her voice" to plaintiff.

Plaintiff's gross salary for 1967 was $7,452.00 but his salary scale for 1968 was $6,670.00 and he gave her $60.00 or $70.00 every two weeks for the home expenses.

During their marriage, defendant worked at the Wig World and at the time of trial she was working at Jewish Hospital in a training program to be a practical nurse.

Defendant's evidence was to the following effect. Two character witnesses testified to the good character of defendant. One witness testified that the home was tidy and she saw plaintiff drinking beer with another woman. Another witness stated that she saw defendant run out of the home screaming with blood running down her legs with plaintiff behind her with a gun. Defendant also testified that plaintiff ran her out of the home while she was dressed in her underclothing and threatened to shoot her because "he didn't want to eat leftovers." She stated that plaintiff struck her with his fists. Defendant denied she nagged her husband, denied she kept company with other men, and de-

nied going to a cocktail lounge with another man. She also denied that she took a knife and scissors to bed with her. She stated defendant has kept company with other women; she was a neat housekeeper; performed her duties as a wife; and, treated her husband with kindness. Plaintiff would start all the arguments and would call her names. She admitted she signed her husband's name to the Liberty Loan note but stated it was done with his permission. She gave her husband about $700.00 from this loan and he gave her back $200.00. She stated plaintiff signed the Household Finance Company note.

Defendant stated that during the marriage, plaintiff would give her $40.00 every two weeks for groceries and household expenses. Defendant stated her rent was $100.00 per month which included utilities and her food expense was $20.00 per week. She has an income of $313.00 per month which includes $57.00 from a welfare agency, $136.00 for her student nursing program training employment, and $120.00 from the plaintiff.

Defendant then listed numerous bills which she had apparently contracted after the separation. The record is silent as to the living expenses of the two minor children other than the rent payment of $100.00 which includes utilities and that $20.00 a week is required for food. And, of course, these two items include the rent and food for the defendant.

█ Since this is a divorce action, it is our duty to review all the evidence and reach our own conclusion as to the proper judgment to be entered. The judgment will not be set aside unless it is clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Civil Rule 73.01(d), V.A.M.R. There is direct conflict in the testimony of the witnesses here; therefore, the proper disposition of this case depends upon the credibility of the witnesses and we are bound to give great deference to the findings of the trial

court. Hugeback v. Hugeback, Mo.App., 444 S.W.2d 23.

Applying these rules to this case, we agree with the conclusions reached by the trial judge and affirm the judgment. The evidence showed that plaintiff was entitled to a divorce. The evidence showed that defendant kept company with other men and was seen in a cocktail lounge dancing and holding hands with another man. The evidence also established that she had signed plaintiff's name to loan agreements without his knowledge or consent and that defendant kept a knife and scissors under her pillow and on one occasion told defendant that he "had better not go to sleep." There was other evidence of misconduct by defendant.

The trial court chose not to believe defendant's testimony. We agree with the trial court's finding as to defendant's credibility. Her testimony was evasive, frequently answering "I don't know" or "I don't remember" and contained many self-contradictory answers.

Based upon our examination of the record we do not find that the award for the support of the children or the award for attorney fees were unreasonable. As to the award for attorney fees, it must be noted that while the transcript consisted of four hundred and twelve pages much of the testimony was unnecessary and irrelevant.

Defendant contends that the trial judge did not maintain an impartial demeanor. The record does disclose an unusual amount of comments by the trial judge and an impatience with the progress of the trial. However, the transcript also discloses that defendant's attorney engaged in long detailed examinations and cross-examinations of witnesses on comparatively minor and unimportant tangents in the case. Despite the rulings of the court, there was a great deal of repetition in the testimony developed by defendant's attorney. We find that the judgment was clearly supported by the evidence and the judgment was not the result of prejudice against either the defendant or her attorney. This is also evident by the award to defendant of $350.00 as additional attorney fees.

Defendant also contends that the court erred in not admitting a letter from the personnel director of plaintiff's former employer showing the reason why he was separated from that employment. The trial court sustained an objection that the letter was immaterial and irrelevant. The contention is without merit. The letter had no relevancy to the issues in this divorce case.

Defendant also attempts to raise other points on this appeal. It is not necessary to set out these points in this opinion. However, these points are in direct violation of Civil Rule 83.05(e), V.A.M.R., which requires an appellant's "points relied on" to be specific and not abstract statements of law. This rule applies also to the appellate review of a court tried case. Lane v. Katt, Mo.App., 421 S.W.2d 544 [6]. The points not discussed in this opinion were general, abstract statements of law and preserved nothing for appellate review.

Both judgments herein considered are affirmed.

WOLFE, P. J., and BRADY, J., concur.