**Glen ADAMS et al., Plaintiffs-Respondents,**

v.

**James O. WHITE, Defendant-Appellant.**

**No. 9250.**

Missouri Court of Appeals, Springfield District.

Nov. 20, 1972.

On Motion for Rehearing or to Transfer Dec. 6, 1972.

**290**

Charles T. Smallwood, Northern, Williams & Smallwood, Rolla, for plaintiffs-respondents.

Jay V. White, Rolla, for defendant-appellant.

TITUS, Chief Judge.

Plaintiffs instituted this action June 19, 1970, to establish the east boundary line of their two properties and the west boundary line of defendant's land "according to [a] survey of record" made by a "Missouri registered land surveyor." The only issue tried and determined was the location of the common boundary line. Ergo, we assume this is an action in eject-

ment for that is the appropriate remedy to employ in the litigation of such matters. Carroz v. Kaminiski, Mo. (banc), 467 S. W.2d 871, 872; Albi v. Reed, Mo., 281 S. W.2d 882, 885(6).

A written stipulation of facts, which included the surveyor's description and plat of the tracts, constituted all the evidence in the cause. Unaided by a jury, the court nisi adjudged the "true boundary line" to be as described in the recorded survey and ordered "that the defendant remove the fence described in the pleadings to conform with the above described boundary line." This judgment had the effect of establishing the boundary line so it "very nearly corresponded" with the boundary as described in plaintiffs' deeds. Defendant appealed. His brief here recites that the trial court erred in failing to find the boundary line to be "the existing fence line as shown on [the recorded survey] and the pleadings" because (1) defendant "had obtained title thereto by adverse possession of the disputed property by uninterrupted possession under a claim of ownership for the full [ten year] statutory period as provided by Section 516.010, R.S. Missouri 1959 [V.A.M.S.]," and because (2) "said fence line complies with and is substantially the line established in accordance with the legal description on [defendant's] deed . . . from the common grantor with [plaintiffs] acquiring their title more than eight years thereafter."

The properties lie in the northeast quarter of the northeast quarter of Section 36, Township 38 North, Range 8 West of the 5th Principal Meridian in Phelps County. According to the stipulation of facts, one W. R. Brown became owner of the entire quarter-quarter section in November 1944 and on July 5, 1956, by deed from unnamed grantees of Brown, defendant acquired title to property described as "Beginning 330 feet East of the Northwest corner of the [quarter-quarter section]; thence South 666 feet to [Road No. 39]; thence in a Northeasterly direction 484 feet North of [Road No. 39] to an iron pin; thence

North 395 feet to an iron pin on the North line of the [quarter-quarter section]; thence West 330 feet to the place of beginning." Plaintiffs' deeds were dated in August 1963; their grantors were Mervin G. East et uxor who were grantees of Brown. The "true place of beginning" of the land deeded to plaintiffs Adams is 580 feet south and 40 feet east of the northwest corner of the quarter-quarter section; "thence South 0°–46'–20" West, a distance of 406.7 [486.7?] feet to a point; thence North 43°–47'–20" East, a distance of 424.9 feet to a point; thence North 0°–46'–20" East, a distance of 102.9 feet to a point; thence South 89°–14'–40" West, a distance of 290.0 feet to the place of beginning." Plaintiff Smith's deed describes his property as having its "true point of beginning" 440 feet south of the northwest corner of the quarter-quarter section; "thence North 89°21' East, 185.0 feet; thence North 83°04' East, 146.2 feet; thence South 0°46' West, 156.0 feet; thence South 89°21' West, 330.0 feet, to the West line of [Road No. 38]; thence North 0°46' East 140.0 feet to the point of beginning."

A conning of the foregoing deed descriptions forces the conclusion that "all parties hereto share a common boundary line of the plaintiffs' East lines and defendant's West line," as the parties so stipulated, and indicates the line would be 330 feet east of the west quarter-quarter section line or would run south from a point 330 feet east of the northwest corner of the quarter-quarter section. However, the stipulated survey reveals that if the first call in defendant's deed is faithfully followed, the southern terminus of a line measuring but 666 feet between the point of beginning and the north line of Road No. 39 would be more than 330 feet east of the west quarter-quarter section line (thereby leaving a gap between plaintiffs' east lines and defendant's west line), and would be less than 484 feet west of the iron pin as stated in the second call of defendant's deed. Moreover, defendant's west line, if it measured 666 feet as stated in his deed, would not run due south from the point of begin-

ning or parallel to the west quarter-quarter section line; neither would it coincide with plaintiffs' east lines as indicated by the stipulation. Also, if the second call in defendant's deed is measured in reverse (i. e., by measuring 484 feet southwesterly from the iron pin to a point and thence northward to the place of beginning), defendant's west boundary line would measure 707 feet, rather than 666 feet as called for in the deed. Furthermore, if defendant's west line, contrary to the deed, measured 707 feet in length, its southern terminus would be less than 330 feet east of the west quarter-quarter section line, it would be 58.8 feet west of where it should be if the line measured 666 feet, and it would encroach 33 feet onto plaintiffs' properties at the south end thereof.

The stipulated "plat illustrates a fence erected and maintained by defendant approximately 33.0 feet West of the line claimed by plaintiffs as their East boundary lines." In oral argument here, defendant's counsel stated that defendant had fixed the south end of the fence by measuring southwesterly along the north side of Road No. 39 a distance of 484 feet from the iron pin referred to in his deed's second call, and had built the fence on a line from that point to the place of beginning or 330 feet east from the northwest corner of the quarter-quarter section, but no explanation is given for the fact that approximately 136 feet north of the south end of the fence it jogs 12 feet sharply to the west. There is nothing in the stipulation of facts which shows when defendant erected this particular fence, which the parties refer to as the "present fence." Plaintiffs averred in their petition that defendant originally constructed a fence in 1965 (the year plaintiffs acquired their lands), that this fence encroached upon the plaintiffs' properties, that defendant moved the fence in 1967 and again in 1969, that the fence still encroaches upon plaintiffs' properties, and "that at all times herein mentioned the plaintiffs have objected to these encroachments." Of course, these petition allegations, sans proof, aid plaintiffs no better than defendant is assisted, without proof, by the bare conclusion contained in his brief that he obtained title to the disputed property by adverse possession. Gonseth v. K & K Oil Company, Mo.App., 439 S.W.2d 18, 21(4), 25(12). In this instance, nevertheless, the parties included in their stipulation of facts that "Defendant has held uninterrupted possession to the present fence on his West boundary line and Defendant recognized the present line as his boundary on the West side of his land at all times since his acquiring said lands. However, the plaintiffs have disputed the location of said boundary as shown by their pleadings."

Whether the stipulated reference to plaintiffs' pleadings would justify a finding that the fence was actually constructed and moved at the different times therein alleged, is something we need not determine. Regardless of when the "present fence" came into esse as the physical. marker for the disputed line, the parties have stipulated that defendant held possession to that line and recognized it as his boundary since 1956. But in our view this stipulation, irrespective of what the defendant contends, falls short of including all of the ultimate facts or factual inferences needed for a determination of the issue of adverse possession. While defendant admittedly had possession up to the disputed line for more than the ten year statutory period, merely taking possession or occupying land of another is not sufficient to put the statute into operation. Terry v. City of Independence, Mo., 388 S.W.2d 769, 773(4). And if a defendant, even through ignorance and mistake of the true boundary, builds a fence which encroaches upon another, his possession will be adverse provided his intention is to hold and claim in all events the entire property that the fence enclosed. Crane v. Loy, Mo., 436 S.W.2d 739, 741–742(1). On the other hand, if a defendant locates the fence on what he recognizes and supposes to be the true line and only intends to

claim to the true line whenever and wherever it might be ascertained, the possession is not adverse. Brown v. Wilson, 348 Mo. (banc) 658, 666, 155 S.W.2d 176, 180(10, 11); Courtner v. Putnam, 325 Mo. 924, 934, 30 S.W.2d 126, 130(3); Milligan v. Fritts, 226 Mo. 189, 197(2), 125 S.W. 1101, 1103(2). Therefore, albeit that the stipulation recites that defendant recognized the line as his boundary, it does not demand an inference as to what defendant intended to unequivocally claim during the time of recognition or while he was in possession. Pollock v. Bouse, Mo., 430 S.W.2d 149, 151. In other words, the stipulation does not answer the real question, which is: What was defendant's claim? and not: Why did he make it? Bell v. Barrett, Mo., 76 S.W.2d 394, 397.

 Adverse possession can be the basis for a defense to an action of ejectment (6 Powell on Real Property ¶ 1027, at p. 762.14), and may be given in evidence under a general denial or plea of not guilty without being specially pleaded. Sanders v. Johnson, Mo., 287 S.W. 427(2); Davies v. Keiser, 297 Mo. 1, 16, 246 S.W. 897, 901(12). Nonetheless, defendant had the burden of proving each of the elements requisite to establishing title by adverse possession [Carlisle v. Keeling, Mo., 347 S.W.2d 191, 195(2)], which are: (1) that his possession was hostile, i. e., under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous. Wykle v. Colombo, Mo., 457 S.W.2d 695, 700(5). No title by adverse possession can ripen should any of these elements be absent. Moss v. James, Mo., 411 S.W.2d 104, 107(1). Even should we assume the stipulation established the last four elements, supra, it does not necessarily follow that the stipulation in and of itself would license a conclusion that the possession was truly adverse. Intention is the controlling factor in determining whether defendant's recognition of the line as his boundary and possession up to that line was adverse or not (Anno.—Adverse Possession—Mistake in Boundary, 97 A.L.R. 14, 53), but the stipulated facts make no mention of what defendant's intention was or what he claimed it to be. While the parties do not allude to it, our courts have announced the principal that " 'in the absence of positive proof or unambiguous circumstances showing that a possession is or is not adverse, the exclusive possession and use of land are presumed to be adverse.' " Edie v. Coleman, 235 Mo.App. 1289, 1297–1298(7), 141 S.W.2d 238, 243(7), aff'd State ex rel. Edie v. Shain, 348 Mo. 119, 152 S.W.2d 174. "However, granting all deference to this presumption, it must be recognized that it does not rest on any fact basis of substantial probative value. It is *purely* an artificial one, a fiction of procedure whose office is to shift the burden of evidence, for reasons of judicial policy, from the claimant [of adverse possession] to the owner of the real estate." Bridle Trail Association v. O'Shanick, Mo.App., 290 S.W.2d 401, 406. In addition, a presumption of fact *may* be regarded by the trier of the facts, but the trier is not compelled to regard it as in the case of a presumption of law. Basham v. Prudential Ins. Co. of America, 232 Mo.App. 782, 789, 113 S.W.2d 126, 131(8); 31A C.J.S. Evidence § 115, at p. 197. Under these circumstances, it becomes important that we determine the method we must follow in reviewing this appeal. When a case comes to us on stipulated facts, the review is made to determine whether the judgment is represented by the proper legal conclusion upon the facts stipulated, provided all ultimate facts or factual inferences have been stipulated. However, when there exist ultimate facts or factual inferences to which the parties have not stipulated, then we review the conceded facts in a light most favorable to the respondent and disregard inferences favorable to the appellant. Semo Motor Co. v. National Mutual Insurance Co., Mo.App., 383 S.W.2d 158, 161(1, 2). To repeat, the stipulated facts before us do not show that defendant's possession was adverse. The mentioned presumption raised an inference that defendant's possession was adverse, but the trial court was not

compelled to regard it; and, as such an inference would be favorable to the defendant, we are compelled to disregard it on appeal. In view of this, we cannot say that the trial court erred in failing to find that defendant had acquired title to the disputed line by adverse possession.

Defendant's brief in neither "Points and Authorities" nor "Argument" cites any authority in support of his second claim of trial court error as required by Rule 84.04(d), V.A.M.R. That point must be considered as abandoned. J. R. Meade & Company v. Barrett & Company, Mo. App., 453 S.W.2d 632, 636(4); Heembrock v. Stevenson, Mo.App., 387 S.W.2d 263, 264(1). Moreover, the second point preserves nothing for review because it consists of a mere abstract statement; this, too, violates Rule 84.04(d) which requires the appellant's "points relied on" to be specific. Boyd v. Boyd, Mo.App., 459 S.W.2d 8, 12(10). This rule applies to appellate review of court tried cases. Lane v. Katt, Mo.App., 421 S.W.2d 544, 546(6).

For the reasons stated, the judgment is affirmed.

STONE and HOGAN, JJ., concur.

*On Motion for Rehearing or to Transfer*

PER CURIAM.

The opinion in this case was filed November 20, 1972. "Motions for rehearing . . . must be filed within 15 days after the opinion of the court shall be filed" (Rule 84.17), and applications of a party to transfer a cause to the Supreme Court "in which an opinion has been filed in a district of the Court of Appeals . . . shall be filed within 15 days of the date upon which the opinion is filed." Rule 83.02. In computing the 15 days prescribed by Rules 83.02 and 84.17, we exclude the date the opinion was filed and include the 15th day thereafter, i. e., December 5, 1972, a Tuesday, because it is not "a Saturday, Sunday or a legal holiday."

Rule 44.01(a). Defendant's motion for rehearing or to transfer was received and filed by the clerk of this court on December 6, 1972, or the 16th day after our opinion was filed. The 15-day limitation for filing defendant's motion "is cast in mandatory language, and neither counsel nor the court is at liberty to ignore or wink at that limitation. The order of this court should be and is that [defendant's] purported motion for rehearing or to transfer be stricken." Hood v. M. F. A. Mutual Insurance Company, Mo.App., 379 S.W.2d 806, 813(13); Hoevelman v. Reorganized Sch. D. R2 of Crawford County, Mo.App., 452 S.W.2d 298, 303(9).