E. P. BELL, Plaintiff-Respondent,

v.

Bobby L. BELL and Genie M. Bell, Defendants-Appellants.

No. 10042.

Missouri Court of Appeals, Springfield District.

June 28, 1976.

J. A. Appelquist, Springfield, for plaintiff-respondent.

John R. Miller, Lamar, for defendants-appellants.

Before STONE, P. J., and HOGAN and TITUS, JJ.

TITUS, Judge.

In March 1973, the then 76-year-old plaintiff sold certain Dade County farmland and a house to defendants, his nephew et uxor. Subsequently a dispute arose as to the quantum of the property sold. The controversy terminated (so it was thought) upon execution of a September 1973 settlement agreement whereby, inter alia, defendants agreed to give plaintiff a lifetime lease to the house and yard. The lease was to terminate before death if plaintiff committed acts which would "invalidate the insurance [on the house] or increase the rate thereon" or if the house became vacant for a period of 120 days. After giving plaintiff a "Notice of Termination" in March 1974 because of plaintiff's alleged "failure to occupy these premises resulting in an increase in the rate of insurance premium,"[1] defendants took possession of the leased property via a lockout in September 1974. It was then that plaintiff commenced the instant action for a declaration of the rights of the parties under the settlement agreement and lease. The Circuit Court of Dade County found, among other things, that "Plaintiff has not forfeited his lifetime lease by any act on his part and did not voluntarily abandon the premises. The Court finds that the evidence did not indicate that a vacancy by Plaintiff had ever occurred in contemplation of law." Judgment was entered accordingly and defendants appealed.

Defendants' two points relied on are: "I This being a court tried case for declaratory judgment, review by this court is in nature de novo, as in other equity cases, and this court's duty is to rule both upon the law and the evidence giving due deference to the findings of the trial court when the credibility of witnesses and the weight of the testimony are involved. II The trial court erred in determining that [plaintiff] has not forfeited his lifetime lease by any act on his part."

1. The record does not show that there ever had, in fact, been an increase in the insurance premium rate caused by any act of the plaintiff.

Rule 84.04(d), V.A.M.R., mandatorily requires [*M & A Electric Power Cooperative v. Nesselrodt*, 509 S.W.2d 468, 470[1] (Mo.App.1974)] that the "points relied on shall state . . . what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous." The requirements of the rule are applicable to court-tried cases. *Boyd v. Boyd*, 459 S.W.2d 8, 12[9] (Mo.App. 1970).

Neither point relied on saves anything for appellate review. The first point is a mere abstract statement of what defendants incorrectly assume to be the law under Rule 73.01–3(a)(b), V.A.M.R. *Hines v. Sweet*, 518 S.W.2d 710, 711[1] (Mo. App.1975). The provisions of Rule 73.01–3(a)(b) are "construed to mean that the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong. The use of the words *de novo* and *clearly erroneous* is no longer appropriate in appellate review of cases under Rule 73.01." *Murphy v. Carron*, 536 S.W.2d 30, 32[1, 2] (Mo. banc 1976).

Defendants' second point fares no better than their first. It is impossible to ascertain from reading the second point "why" defendants claim the court erred in determining that plaintiff had not forfeited the lease. The rule [84.04(d)] requires the points to be specific [*Adams v. White*, 488 S.W.2d 289, 294[13] (Mo.App.1972)], and does not obligate an appellate court to search the transcript or the argument portion of the appellant's brief to come by "why" the complained of determination is said to be erroneous. *Barber v. M. F. A. Milling Co.*, 536 S.W.2d 208, 210[4] (Mo.App. 1976). But rather than dispatch the appeal at this juncture for flagrant rule violation,

we ex gratia and most summarily consider it on its merits.

The evidence disclosed that plaintiff had lived at the leased premises since 1933 and had built the leased house around 1967. He testified at trial that he considered the house his place of residence and abode and had brought the present action because he wanted to continue living there. By the time plaintiff had sold the property in question to defendants in March 1973, he had experienced recurring ill health and periods of hospitalization for a heart condition. For three years or more before the February 1975 trial of this cause, plaintiff's health and general well-being showed such marked deterioration that he was unable to drive an automobile or to be wholly self-sufficient. Because of his physical condition and to be more readily accessible to health facilities and doctors, from March 1973 to the same month in 1974, plaintiff spent about half his time at the leased house and the other half in the home of a sister in Springfield. Commencing around March 1974 until he was locked out of the leased house, plaintiff was spending about two-thirds of his time with his sister and the remainder at his Dade County home. During this whole period plaintiff kept the leased house "comfortably furnished," which permitted him and any visitors to eat and sleep at the house and, in addition, he paid a man and another sister to clean the house regularly and to keep the yard mowed and otherwise maintained. Although plaintiff had his first-class mail delivered to his sister's house in Springfield, all other mail went to his Dade County residence.

Since there was no evidence that plaintiff's conduct had invalidated the insurance on the leased house or had caused an increase in the insurance premiums, the only basis for defendants' contention that plaintiff had violated the terms of the lease was that he had permitted the house to become vacant.

"The term 'vacant' is generally construed to mean empty and without inanimate objects. It implies entire abandonment, non-

occupancy for any purpose." *Drummond v. Hartford Fire Insurance Company*, 343 S.W.2d 84, 86[4] (Mo.App.1960). It also means "having nothing in it, as a space; devoid of contents; being without content or occupant; containing nothing." Webster's New World Dictionary of the American Language, College Ed., p. 1606; Webster's New Collegiate Dictionary, p. 1290; The American Heritage Dictionary of the English Language, p. 1412.

The definitions of "vacant", supra, when considered with and applied to the facts previously recited, lead us indubitably to the conclusion that there was substantial evidence to support the judgment of the circuit court. Therefore, its judgment stands affirmed.

All concur.